## JONATHAN C. MERRILL *versus* THE BANK OF NORFOLK.

The plaintiff, being the holder of a negotiable note indorsed in blank, delivered it, without putting his name upon it, to an agent to procure it to be discounted. The agent indorsed it in his own name, and sent it to a bank, and the messenger represented that the money was wanted for the accommodation of the agent. The bank discounted the note and passed the proceeds to the credit of the agent, and the same were then attached as his property, in the possession of the bank, on a trustee process. The plaintiff forthwith informed the bank that the note belonged to him and demanded payment of the proceeds. *Held*, that the bank was responsible to him therefor.

ASSUMPSIT on the common money counts.

At the trial, before *Putnam* J., it was testified, that Thomas Lamson, a lumber broker doing business in Boston, received from the plaintiff, who lived in the State of Maine, a consignment of lumber for sale; that Lamson sold a part of it to Emery & Perkins; that he told the plaintiff he took no note on his own responsibility; that the plaintiff directed him to take the note of Emery & Perkins; that they gave their note, payable in four months, to their own order, and by them indorsed; that Lamson sold the residue of the consignment to one Whitney, for cash; that he paid over to the plaintiff the money received of Whitney, deducting his commissions on the two sales; that the plaintiff saw the note of Emery & Perkins, after it was taken, and left it with Lamson to get it discounted, or to collect it if he could not get it discounted; that Lamson indorsed the note and gave it to his son to get it discounted at the Norfolk Bank; that the plaintiff did not indorse it; that Lamson had no interest in it; that he did not send any message to the bank by his son; that the cashier asked the son if the money was wanted for the accommodation of the promisors, and the son replied that it was for the accommodation of his father; that on the next day the son called again at the bank, when the directors were in session, and the cashier told him the note would probably be done, and that when done he would send the money to him; that the note was discounted, and the proceeds passed to the credit of Lamson, at about 10 o'clock in the morning, and afterwards, at about 1 o'clock, the proceeds

were attached in the hands of the defendants, on a trustee process sued out by one Dorr against Lamson ; that the cashier sent word to Lamson in the afternoon, informing him of the service of the trustee process ; that on the next day Lamson called at the bank and stated that the note did not belong to him but to the plaintiff; and that some time after, but before this action was commenced, Lamson called again and exhibited a power of attorney from the plaintiff, and demanded the proceeds of the note on behalf of the plaintiff, which the cashier declined paying, on account of the trustee process.

Merrill<br><i>v.</i><br>Bank of<br>Norfolk.

A default was entered, subject to the opinion of the whole Court.

*D. A. Simmons* and *Gay*, for the defendants, cited *Kelley* v. *Munson*, 7 Mass. R. 319.

*March 9th.*

*Rand* and *Fiske*, for the plaintiff, cited *Kelly* v. *Bowman & Tr.* 12 Pick. 383 ; *Thompson* v. *Perkins*, 3 Mason, 232 ; *Denston* v. *Perkins*, 2 Pick. 86 ; *Chesterfield Manuf. Co.* v. *Dehon*, 5 Pick. 7 ; *Taylor* v. *Plomer*, 3 Maule & Selw. 562 ; 3 P. Wms. 186, note ; *Price* v. *Ralston*, 2 Dallas, 67 ; *Vulliamy* v. *Noble*, 3 Meriv. 593 ; *Rowton, ex parte*, 17 Ves. 431 ; *Scott* v. *Surman*, Willes, 400 ; *Scrimshire* v. *Alderton*, 2 Str. 1183 ; *Parsons* v. *Webb*, 8 Greenleaf, 38.

Morton J. delivered the opinion of the Court. Lamson was the agent of the plaintiff. His acts were the acts of the plaintiff. The sale bound the plaintiff, transferred the property to the purchasers and vested the proceds in the plaintiff. *Kelley* v. *Munson*, 7 Mass. R. 319.

*March 13th.*

The factor sold at the risk of the plaintiff, and had actually received his commissions. The note was not payable to the factor ; but had it been so, it would not have affected the plaintiff's right. The indorsement of the note by the factor did not make, or show, him to be the owner of it. As he was the plaintiff's agent for the collection of the note and had the possession of it, payment to him would have been payment to his principal ; and the payer would not be responsible for the misapplication of the agent.

Even if the factor's son deceived the defendants, as to the ownership of the note, the deception could not impair the plaintiff's interest in it ; nor could the act of the defendant, in

Merrill
*v.*
Bank of
Norfolk.

giving credit for the proceeds to the factor, even if done at his request, divest the plaintiff of his property. It did not amount to payment; and nothing short of payment either to the plaintiff or his agent, would discharge the defendants from their liability. The plaintiff may follow the property, however it may change form or in whosesoever hands it may be found, until his rights be divested by his own act or authority. *Thompson* v. *Perkins et al.* 3 Mason, 232 ; *Denston* v. *Perkins et al.* 2 Pick. 86 ; *Chesterfield Manuf. Co.* v. *Dehon et al.* 5 Pick. 7 ; *Kelly* v. *Bowman and Tr.* 12 Pick. 383.

The defendants having the plaintiff's money in their hands, for which a demand was made before the action was commenced, are liable for the amount, with interest from the time when it was demanded.

*Judgment on the default.*